John CALABRIA and Faire Calabria, Plaintiffs,

v.

ASSOCIATED HOSPITAL SERVICE, Defendant.

Frank SPOTO, Jr., Plaintiff,

v.

ASSOCIATED HOSPITAL SERVICE, Defendant.

Nos. 73 Civ. 544, 73 Civ. 3326.

United States District Court,
S. D. New York.

Nov. 6, 1978.

David Hirschhorn, New Hyde Park, for plaintiffs.

Jerrold I. Ehrlich, New York City, for defendant.

## OPINION

BONSAL, District Judge.

In this consolidated action, plaintiffs, John Calabria, his wife Faire Calabria, and Frank Spoto are suing Associated Hospital Service, a non-profit New York corporation, for alleged breach of their Blue Cross hospital service contract. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332. A non-jury trial was held on September 19, 1978.

Each of the plaintiffs had a Blue Cross hospital service contract with defendant which was in full force and effect at the time they were denied benefits for hospital treatment at the Hospital of Rehabilitation

Medicine in New York City, popularly known as the Rusk Institute ("Rusk").

Each of the contracts between plaintiffs and defendant contained the following clause:

ARTICLE V—EXCLUSIONS

A. Hospital Service Shall Not Be Provided:

. . . . .

4. For a hospital stay or that period of a hospital stay which is primarily for . . physiotherapy or rehabilitation or any combination thereof, or during which the services rendered to the Subscriber are primarily physiotherapy, rehabilitation services, . . . or any combination thereof.

Effective in April, 1973, defendant amended its hospital service contract to provide rehabilitation benefits for a period of 30 days.

Each of the plaintiffs is seeking payment of benefits in connection with his or her hospitalization at Rusk. Defendant provided benefits to all three plaintiffs in connection with their treatment at other hospitals. Defendant contends that plaintiffs' hospitalization at Rusk was primarily for physiotherapy and rehabilitation services which were expressly excluded from coverage under Article V(A)(4) of the contract.

The following is a brief summary of the hospitalizations of the plaintiffs.

*John Calabria*

Plaintiff John Calabria, a New Jersey resident, suffered a serious spinal injury on April 17, 1971 which rendered him a paraplegic, with paralysis and loss of sensation of the lower extremities. After an initial period of hospitalization at Mountainside Hospital in Montclair, New Jersey, he was transferred on June 3, 1971 to Rusk.

John Calabria claims benefits for five periods of hospitalization at Rusk. The first three periods from June 3, 1971 to August 10, 1971, from August 11, 1971 to December 12, 1971, and from December 16, 1971 to April 8, 1972 constitute essentially one continuous stay at Rusk which was interrupted by temporary transfers to the adjoining University Hospital facility for treatment of his urological complications.

The discharge summary for the first three periods of hospitalization at Rusk states that John Calabria was initially transferred there for "intensive rehabilitation" and that the treatment for him included "individual physical therapy, progressive resistive exercises, mat activities, and tilt table" and that he underwent treatment there for urological disorders.

Defendant made payment with respect to the first twenty-eight days of his stay at Rusk based upon the attending physician's certification of June 3, 1971 that John Calabria required "acute general hospital services in addition to physical medicine and rehabilitation services because of the following condition(s): traumatic paraparesis with sacral decubitus, neurogenic bowel, bladder." Pursuant to the attending physician's certification of June 30, 1971, that he "no longer requires acute general hospital services in addition to physical medicine and rehabilitation services," defendant denied further benefits on the ground that the hospitalization was primarily for rehabilitation and therefore excluded by the contract.

With respect to John Calabria's fourth period at Rusk, from January 1, 1973 until January 11, 1973, the discharge summary for the period from January 1, 1973 until an unspecified date indicated he was admitted "for a medical checkup, urological workup, and brace revisions."

With respect to his treatment during his fifth confinement, from February 5, 1973 to April 1, 1973, no evidence was introduced.

With regard to these last two periods of hospitalization for John Calabria at Rusk, he made no claim nor notice of admission to the hospital to defendant, as required by the contract to be given within 30 days after admission to a hospital. Defendant made no payment of benefits as it was not advised of any claim.

*Faire Calabria*

Plaintiff Faire Calabria, the wife of plaintiff John Calabria, fractured her left

hip on September 15, 1971 while visiting her husband at Rusk. She was immediately admitted to the adjoining University Hospital where she remained until October 23, 1971 when she was transferred to Rusk at her request to be with her husband. She remained at Rusk from October 23, 1971 until January 18, 1972.

The doctor's certification for her admission to Rusk states that she "requires primarily physical medicine and rehabilitation service" for her hip injury. Her discharge summary for this period indicates that she was admitted "for rehabilitation" and describes her treatment program to have included "progressive resistive exercises, active range of motion to the left hip, general conditioning exercises, and training in the activities of daily living."

The defendant denied benefits on the ground that her hospitalization was primarily for rehabilitative purposes and thereby excluded.

*Frank Spoto*

Plaintiff Frank Spoto, a Connecticut resident, sustained a cervical cord injury on August 8, 1971 which rendered him a quadriplegic. After his initial period of hospitalization at Stamford Hospital in Stamford, Connecticut, he was transferred to Rusk on December 1, 1971.

Spoto spent eight periods of hospitalization at Rusk. The first three cover from December 1, 1971 to April 20, 1972, from April 24, 1972 to June 7, 1972, and from June 12, 1972 until August 4, 1972. These three periods constitute essentially one continuous period of hospitalization at Rusk interrupted by temporary transfers to the adjoining University Hospital for the treatment of urological disorders.

The discharge summary for these three periods indicates that Spoto was initially transferred to Rusk for "intensive rehabilitation" and describes the course of treatment as including "individual physical therapy, progressive resistive exercises, tilt table, occupational therapy, and activities of daily living", and further states that he was administered "phenol block" treatment for spasticity.

Defendant paid benefits for the first five days of his hospitalization at Rusk. Defendant denied benefits for the remaining period on the ground that the hospitalization was primarily for rehabilitation services.

The fourth period of hospitalization at Rusk was from September 18, 1972 until September 30, 1972. The final summary for this period indicates that Spoto was readmitted "for additional phenol blocks" and further states that the prescribed treatment consisted of "phenol blocks to both sciatic nerves, to both obturatur nerves, and again to the right sciatic nerve." Benefits for this hospitalization were denied by defendant on the ground that the hospitalization was primarily for rehabilitation services.

With respect to Spoto's fifth period at Rusk from January 3, 1973 until January 26, 1973, the final summary states that he was "admitted at this time for a urological workup and for further treatment of his spasticity." According to this discharge, the course of treatment given to him during this period included evaluation in "physical therapy, occupational therapy, activities of daily living, and mat activities" and included a further phenol block treatment. No claim nor notice of admission was made to defendant, as required by the contract, and therefore no benefits were paid by defendant.

Benefits for the sixth and seventh periods of hospitalization at Rusk from July 8, 1973 to July 13, 1973, and from October 26, 1973 until November 5, 1973, were paid by defendant as Spoto's contract had been amended to include rehabilitation benefits for 30 days.

The eighth period for Spoto at Rusk was from June 13, 1974 until July 5, 1974. The discharge summary for this period reads: "He was readmitted following surgery for the removal of a tumor on his back felt to be a low grade fibrosarcoma." The course of treatment for him at this time was described as "physical therapy." With respect

to this last period, no notice of admission nor claim was made to the defendant as required by the contract, and therefore, defendant paid no benefits.

None of the plaintiffs suffered any out-of-pocket losses by reason of defendant's denial of benefits under their Blue Cross contract. John and Faire Calabria's hospitalization was paid in full by the New Jersey Office of Vocational Rehabilitation. Frank Spoto's hospitalization was paid in full by a Connecticut agency.

*Discussion*

The only issue presented is whether the hospitalizations of plaintiffs at Rusk are excluded from benefits under plaintiffs' Blue Cross contract by Article V(A)(4) on the ground that they were primarily for physiotherapy or rehabilitation or a combination thereof.

Plaintiffs contend (1) that the term "rehabilitation" in the contract is ambiguous and therefore may not be used to exclude plaintiffs' benefit payments for their hospitalizations at Rusk; (2) that the treatments and/or services provided to them at Rusk are properly termed "physical medicine" which they allege to be distinct from "rehabilitation" and "physiotherapy"; and (3) that certain services performed at Rusk constituted regular medical treatment and that therefore their hospitalizations were not primarily for rehabilitation.

Defendant denies plaintiffs' contentions and argues that the hospitalizations at Rusk were excluded by Article V(A)(4) of the contract.

■ In its memorandum decision filed July 6, 1977, this Court held, for the reasons there stated, that the terms "physical medicine" and "physiotherapy" are synonymous. It follows that "physical medicine" is included within the meaning of "physiotherapy" as that term is used in the contracts.

■ While plaintiffs contend that their treatment at Rusk included general medical services and therefore did not constitute primarily rehabilitation, the evidence at trial did not support this contention. On the

contrary, the evidence indicated that the treatment at Rusk was primarily for rehabilitation.

■ Plaintiffs' hospital expenses while at Rusk were paid by public agencies. The New Jersey Office of Vocational Rehabilitation paid the hospital expenses of plaintiffs John and Faire Calabria, and the Connecticut Office of Vocational Rehabilitation or, alternatively, Connecticut Medicaid paid the hospital expenses of Frank Spoto. Therefore, defendant contends that plaintiffs have failed to make out a prima facie case since plaintiffs have sustained no damages as a result of defendant's alleged breach of the contract. Under New York law, in the absence of allegations of facts showing damages, allegations of a breach of a contract will not be sufficient to sustain a complaint. *See Mid-City Shopping Center, Inc. v. Consolidated Mutual Insurance Co.,* 58 Misc.2d 997, 297 N.Y.S.2d 375, 377 (Albany Co.Sup.Ct.1969); *Ryan Ready Mixed Concrete Corp. v. Coons,* 25 A.D.2d 530, 267 N.Y.S. 627, 630 (2d Dept. 1966); and *Reade v. Sullivan,* 259 App.Div. 229, 18 N.Y.S.2d 841 (1st Dept. 1940). Plaintiffs do not appear to have suffered any damages since their hospital expenses at Rusk were paid by the public agencies above mentioned.

For the foregoing reasons, plaintiffs have not established that defendant has breached its contracts.

The above constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52. Judgment will be granted in favor of the defendant.

Settle judgment on notice.